THE KNICKERBOCKER ICE COMPANY
*v.*
EMIL BENEDIX.

*Opinion filed December 16, 1903.*

1. STREET RAILWAYS—*relative rights of teams and street cars at crossings.* If a street car and a team are approaching a street crossing at the same time, and there is nothing to prevent the driver from seeing that the car, traveling at ordinary speed, will reach the crossing first, it is his duty to stop, and those in charge of the car may assume he will stop the team before it strikes the car.

2. INSTRUCTIONS—*when failure to limit consideration of evidence of intoxication to question of liability is not misleading.* Failure of an instruction to limit the consideration of the intoxication of defendant's servant whose alleged negligence caused the injury, to the question of defendant's liability, is not misleading, where no question of punitive or vindictive damages was involved, the case being tried upon the theory that only actual damages were recoverable.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an action on the case, brought by appellee in the superior court of Cook county, to recover damages for a personal injury occasioned through the alleged negligence of appellant. A trial before a jury resulted in

a verdict for $2000 in favor of appellee. Judgment was entered on the verdict and an appeal was taken to the Appellate Court for the First District, where the judgment of the superior court was affirmed, and the case is now before this court on appeal from the Appellate Court.

Appellee received the injuries complained of in this suit on May 30, 1900, in the city of Chicago, while engaged in the performance of his duties as a street car conductor for the Chicago Union Traction Company. The car was running west on North avenue, in that city, and when about one hundred feet from Leavitt street, an intersecting street, the appellee rang a bell on the car as a signal to the motorman to stop at Leavitt street for the purpose of allowing passengers to get off the car. The car commenced to slacken speed. It had almost crossed the intersection of the streets when an ice wagon belonging to the appellant, drawn by two horses, coming south on Leavitt street, ran into the car, and the pole of the wagon struck the plaintiff's leg with sufficient force to break it and seriously injure him. The car contained no aisle running lengthwise, and it was necessary for appellant, in performing his duties as conductor, to pass from one end of the car to the other along a foot-board running outside the car its entire length and provided for that purpose. Appellee, immediately prior to the time of receiving the injury, was on the north foot-board of the car, with his face turned south, collecting fares. He testified that he heard the rumbling of a wagon, and looking backward saw the wagon, about twenty feet away, coming rapidly south on Leavitt street toward the car; that he tried to jump forward out of the way, but was struck just as he jumped. The evidence tends to show that the horses were being driven so fast that the driver was unable to stop them in time to avert the injury; that just before reaching Leavitt street the motorman sounded a gong on the car to give warning of the approaching car, and that the car was moving slowly

when struck by the wagon pole. The wagon weighed 3700 pounds, and the ice it contained weighed 2200 pounds. Three employees of appellant, one of whom was driving the horses, were in the wagon at the time it collided with the car, and the evidence tends to show that these employees were intoxicated.

WILFRED H. CARD, and QUINN O'BRIEN, for appellant.

GEMMILL & FOELL, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Defendant below, at the conclusion of plaintiff's evidence, and again at the conclusion of all the evidence, moved the court to instruct the jury to return a verdict for the defendant. Both motions were overruled, and appellant presents to this court, as a matter of law, the question whether the evidence sustaining the cause of the plaintiff below, with the reasonable inferences to be drawn therefrom, is sufficient to warrant a verdict for the plaintiff.

A considerable portion of appellant's brief and argument is devoted to establishing the fact that either appellee or the motorman could have seen the approaching wagon and stopped the car, and thereby avoided the accident. It may be conceded that this is true; but this fact does not in any way tend to show that appellant was not guilty of negligence or that appellee was guilty of negligence. As the car approached the point where the line of travel it was following would intersect the line of travel the appellant's team was following, it was traveling at a reasonable rate of speed, as shown by the evidence. Traveling at that rate of speed it reached the intersection first. There was nothing to prevent appellant's driver seeing the car and perceiving that it would reach the point of intersection first. Under these circumstances it was the duty of the driver of the team, and not the duty of those in charge of the car, to stop,

and the failure of the driver to stop his team under the circumstances is the negligence of appellant.

A large number of cases are cited in reference to the duty of those in charge of a street car to look ahead as they approach the street crossing, for the purpose of avoiding accidents to persons or vehicles using the crossing. These are all cases where the street car company has been made defendant, and have no application here. None of them go to the extent of holding that it is the duty of the conductor or motorman to stop a car for the purpose of permitting a vehicle traveling at right angles with the car to pass over the intersection first, when the car, by reason of its nearness to the point of intersection, has the right of way. The evidence tended to show that immediately preceding the collision the team of the appellant was traveling at a higher rate of speed than was the car. Those in charge of the car had the right, however, to assume that those in charge of the team would recognize the superior right of the car and stop the team before it ran into the car.

The court properly refused the peremptory instruction to find for the defendant.

The only other error presented was the modification of appellant's ninth instruction. This instruction, as requested, read as follows:

"The jury are instructed that the mere fact, if it is a fact, that the servants of the ice company were intoxicated would not make the defendant liable, provided you believe, from the evidence, that at and just before the time of the accident said servants were using ordinary care in driving the team in question. And even though you should believe that said servants were intoxicated, you should find the defendant not guilty if you also believe, from the evidence, that the plaintiff himself failed to exercise reasonable care to prevent the accident, and that if he had exercised such care the accident would not have occurred."

The court modified it by adding thereto the following: "But in arriving at your verdict you have a right to consider whatever the evidence may show as to whether or not the servants of the defendant were intoxicated, together with all the other evidence in the case." The objection made to this modification is, that it tells the jury, in arriving at their verdict they may consider the evidence of intoxication. This is said to be too broad; that the instruction, at least, should do no more than advise the jury that in determining defendant's liability they had a right to consider the evidence on that subject, the reasons assigned being, that determining the amount. of damages to be allowed was a part of the process of arriving at a verdict, and that the jury were therefore improperly told that they might consider the evidence of intoxication of appellant's driver in fixing the amount of damages. If this were a case in which punitive damages had been claimed we can see that this instruction might have this effect, but a careful examination of the record shows that it was tried by both sides on the theory that the jury could award to the plaintiff only the actual damages sustained by him. So far as appears from the record, the question of punitive or vindictive damages was not suggested in the course of the trial. We do not think, under these circumstances, that the jury would understand from this instruction, as modified, that they were authorized to increase the amount of their verdict if they found, from the evidence, that appellant's driver was intoxicated. While the consideration of the evidence on the subject of intoxication might well, by the language of the instruction, have been limited to the deliberations of the jury in determining defendant's liability, we do not think the jury, under the circumstances of this case, could have given it any weight in fixing the amount of their verdict.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*